# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **VIRGINIA CONKLIN & ALYSON CLARK,** individually and on behalf of all similarly-situated individuals, | Case No. 2:16-CV-675 |
| **Plaintiffs,** | JUDGE ALGENON L. MARBLEY |
| v. | Magistrate Judge Deavers |
| **1-800 FLOWERS.COM, INC.,** *et al.*, | |
| **Defendants.** | |

## OPINION & ORDER

This matter is before the Court on the motion of Plaintiffs Alyson Clark and Virginia Conklin for conditional certification of a class under § 216 of the Fair Labor Standards Act ("FLSA") and for approval of their proposed notice and consent to sue forms. (*See* Doc. 30.) For the reasons discussed below, Plaintiffs' motion is **GRANTED** in part.

## I. BACKGROUND

Plaintiffs bring this action for wage and hour violations under the FLSA and related Ohio laws, on behalf of themselves and individuals employed by Defendant 1-800-Flowers Service Support Center, Inc. ("Defendant") as Customer Service Representatives, Priority Voice Specialists, or other equivalent job title call-center employees (collectively, "CSRs"). (Mem. in Support of Mot. for Conditional Class Cert., Doc. 31, at 1.) Defendant is a New York corporation and subsidiary of 1-800-Flowers.com, Inc. (Am. Compl., Doc. 19, ¶ 11.) 1-800-Flowers.com provides gourmet food and floral gifts through various registered tradenames. (Doc. 31 at 2.) Defendant has call centers nationwide, and named Plaintiffs are former employees of Defendant's call center in Hebron, Ohio. (*See* Doc. 19 ¶¶ 11, 13.) While their formal job titles may differ, Plaintiffs claim that they and putative class members "all perform

similar job duties, namely: answering customer calls, assisting customers with orders, processing refunds, tracking orders, and otherwise responding to customer issues." (*Id.* ¶ 15.)

Additionally, Plaintiffs assert that all of Defendant's CSRs were subjected to the "same companywide policy of requiring them to show up for their shifts 15 to 30 minutes before their shifts' technical start times." (Doc. 31 at 3.) This alleged off-the-clock work occurred for two reasons: (1) so that Plaintiffs could "boot up their computers and log on to programs" prior to their shifts, which allowed them to "answer customer calls as soon as their nominal shifts started"; and (2) because Defendant does not assign CSRs to a specific workstation, so CSRs must find a desk at which to work for their scheduled shifts *before* the shift actually starts. (*See* Doc. 19 ¶¶ 16, 21.) According to Plaintiffs, two CSR trainers, Tracy Larsin and Joy Conklin, informed them that Defendant's national headquarters in New York instituted this 15 to 30 minute pre-shift, off-the-clock work requirement. (*See id.* ¶ 19; *see also* Doc. 31 at 3.) All of Defendant's CSRs were also allegedly subjected to the same compensation policy: none of them was paid for this off-the-clock work. (Doc. 31 at 3.)

Plaintiffs' Amended Complaint asserts causes of action under the FLSA (Count 1); the Ohio Minimum Fair Wage Standards Act (Ohio Rev. Code Chapter 4111) and the Ohio Prompt Pay Act (Ohio Rev. Code § 4113.15(A)) (Count 2); and for breach of contract (Count 3). (*See* Doc. 19 ¶¶ 57–72.) Plaintiffs ask the Court to certify conditionally this case as a collective action for unpaid overtime wages under the FLSA. Specifically, Plaintiffs seek to certify conditionally a class defined as:

> **All call center "Customer Service Representatives," or similar job title, employed by 1-800-Flowers Services Support Center, Inc. anywhere in the United States or its territories, who were not paid for the overtime hours they worked.**

(*See* Doc. 30 at 1.) Plaintiffs also ask the Court to:

- Approve their proposed notice and consent to sue forms;

- Compel Defendant to produce the full names, all known addresses, e-mail addresses, and telephone numbers of potential class members within **14 days** of the Order granting this motion;

- Permit Plaintiffs' counsel to send, within **14 days** of receipt of the class list from Defendant, the Court-authorized notice and consent to sue forms via U.S. mail and e-mail to putative class members;

- Require Defendant to post a copy of the Court-authorized notice in all call centers;

- Allow putative class members to file consents to sue using an electronic signature service;

- Allow **90 days** for putative class members to return their consent to sue forms to Plaintiffs' counsel; and

- Appoint Plaintiffs' counsel as counsel for members of the putative class.

(*See id.* at 1–2.) Plaintiffs' motion is ripe for adjudication.

## II. STANDARD OF REVIEW

The FLSA allows employees to maintain an action on behalf of "themselves and other employees similarly situated." 29 U.S.C. § 216(b). Section 216(b) specifies that "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." This means that putative plaintiffs in FLSA collective actions, such as this one, must opt in to the litigation. *See Albright v. Gen. Die Casters, Inc.*, 5:10-CV-480, 2010 WL 6121689, at *2 (N.D. Ohio July 14, 2010) ("[U]nder the FLSA a putative plaintiff must affirmatively opt-in to the class"); *Jackson v. Papa John's USA, Inc.*, No. 1:08-CV-2791, 2009 WL 385580, at *4 (N.D. Ohio Feb. 13, 2009) (same). In short, the Act establishes two requirements for a representative FLSA action against an employer: "(1) the plaintiffs must actually be 'similarly situated,' and (2) all plaintiffs must signal in writing their affirmative consent to participate in the action." *Snelling v. ATC*

*Healthcare Servs., Inc.*, No. 2:11-CV-983, 2012 WL 6042839, at *2 (S.D. Ohio Dec. 4, 2012) (quoting *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006)).

Notably, the commencement of an FLSA collective action does not toll the statute of limitations for putative class members. *Stout v. Remetronix, Inc.*, No. 3:13-cv-026, 2013 WL 4048241, at *2 (S.D. Ohio Aug. 9, 2013); 29 U.S.C. § 256(b). An FLSA collective action "is considered to have commenced as to each individual opt-in plaintiff only when she files written consent to join the action." *Myers v. Marietta Mem'l Hosp.*, 201 F. Supp. 3d 884, 897 (S.D. Ohio 2016) (citing 29 U.S.C. § 256). The distinct "opt-in" structure of § 216(b) heightens the need for employees to "receiv[e] accurate and timely notice concerning the pendency of the collective action." *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989). The statute therefore vests district courts with "discretion . . . to implement 29 U.S.C. § 216(b) . . . by facilitating notice to potential plaintiffs." *Id.* at 169. The decision to conditionally certify a class, and thereby facilitate notice, is thus "within the discretion of the trial court." *Snelling*, 2012 WL 6042839 at *2 (citing *Hoffman-La Roche*, 493 U.S. at 169).

Accordingly, the Sixth Circuit has "implicitly upheld a two-step procedure for determining whether an FLSA case should proceed as a collective action." *Heibel v. U.S. Bank Nat'l Ass'n*, No. 11-cv-593, 2012 WL 4463771, at *2 (S.D. Ohio Sept. 27, 2012) (citations omitted). At the "initial notice" stage, before discovery has occurred, the Court "determine[s] whether to conditionally certify the collective class and whether notice of the lawsuit should be given to putative class members." *Id.* (quotation omitted). The second stage of the FLSA collective action analysis occurs once discovery is complete, when "the defendant may file a motion to decertify the class if appropriate to do so based on the individualized nature of the plaintiff's claims." *Id.* (quotation omitted).

Whether Plaintiffs' suit may proceed as a collective action pursuant to the FLSA at the initial notice stage, then, depends on a showing that potential class members are in fact "similarly situated." *Comer*, 454 F.3d at 546. At this stage, the Court "does not generally consider the merits of the claims, resolve factual disputes, or evaluate credibility." *Myers*, 201 F. Supp. 3d at 890 (internal citations omitted). The FLSA does not explicitly define the term "similarly situated," nor has the Sixth Circuit. *Wade v. Werner Trucking Co.*, No. 10-cv-280, 2012 WL 5378311, at *3 (S.D. Ohio Oct. 31, 2012) (citing *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 584 (6th Cir. 2009)). Although the Sixth Circuit has declined to "create comprehensive criteria for informing the similarly situated analysis," it has held that FLSA plaintiffs may proceed collectively in cases where "their claims [are] unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." *O'Brien*, 575 F.3d at 585. At this first stage, then, "the plaintiff must show only that 'his position is similar, not identical, to the positions held by the putative class members.'" *Comer*, 454 F.3d at 546–47 (quoting *Pritchard v. Dent Wizard Int'l*, 210 F.R.D. 591, 595 (S.D. Ohio 2002)). The Court considers that issue "using a fairly lenient standard, and typically [the determination] results in conditional certification of a representative class." *Id.* at 547 (quotation omitted).

### III. ANALYSIS

There are three issues before the Court in this first-stage analysis: (1) the appropriateness of conditional certification under the FLSA; (2) the propriety of Plaintiffs' proposed notice; and (3) whether Plaintiffs' counsel should be appointed class counsel in this action. The Court will address each issue in turn.

#### A. Conditional Certification

Plaintiffs seek FLSA conditional certification with respect to the following class:

> **All call center "Customer Service Representatives," or similar job title, employed by 1-800-Flowers Services Support Center, Inc. anywhere in the United States or its territories, who were not paid for the overtime hours they worked.**

(*See* Doc. 30 at 1.) As set forth above, at this stage, Plaintiffs need only meet the "fairly lenient" burden of showing that they are similarly situated to putative class members. *See Comer*, 454 F.3d at 547. In addition to the allegations in their Amended Complaint, Plaintiffs submitted three declarations. (*See* Conklin, Clark, and Stoneking Decls., Docs. 31-1, 31-2, and 31-3.) In their declarations, these employees of Defendant's Hebron call center (two of whom are the named Plaintiffs) asserted that: (1) their duties were to take customer calls and resolve issues customers had with Defendant's services or products; (2) their trainers informed them that Defendant's management required employees to show up for their shifts between 15 and 30 minutes early; (3) during this time before shifts, employees were required to find an open workstation; (4) employees had to boot up their computers and log in to computer and phone software before the start of their shifts; and (5) they are aware of other CSRs who performed the same duties and were subjected to Defendant's same compensation policy of not paying its employees for off-the-clock work. (*See* Docs. 31-1, 31-2, 31-3.)

Defendant argues that Plaintiffs' motion should be denied because the proposed class is vague and overbroad, Plaintiffs are not similarly situated to the putative class members, and Plaintiffs have failed to identify a common policy or plan that violates the FLSA. (*See* Doc. 33 at 11–18.) With regard to the class definition, Defendant points to the declarants' different job titles—Conklin was a CSR and Clark was a "Priority Voice Specialist"—and notes that it would take an individualized determination across the putative class to determine whether various job titles are indeed similar. (*See id.* at 12.) As for whether putative class members are similarly situated, Defendant cites a five-factor test utilized by the Eleventh Circuit that Plaintiffs must

establish the putative class members meet, and submits the declarations of ten of Defendant's employees. (*See generally id.* Ex. B.) Defendant's declarants stated that they are *not* similarly situated to Plaintiffs, as they did not work off the clock, and did not come into work early. (*Id.*) They also stated that employees in different positions used different timekeeping and computer software programs. (*Id.*) Finally, they confirmed that Defendant's written policy is for "employees to accurately record their time" and that Defendant "properly pays them for all of the hours they work." (Doc. 33 at 13.) Because Defendant has this written policy that employees must not work off the clock, and that requires employees to be paid for all hours worked, Defendant argues that Plaintiffs have not identified a common policy or plan that runs afoul of the FLSA. (*See id.* at 16.)

Plaintiffs correctly point out in their reply brief that Defendant mischaracterizes the lenient standard for first-stage conditional certification, and also relies on law from outside this jurisdiction "in an attempt to impose a heavier burden on Plaintiffs than what the Sixth Circuit and this Court require for first stage conditional certification." (Doc. 34 at 2.) To demonstrate that putative class members are "similarly situated," a plaintiff "must demonstrate a factual nexus—that is, something more than 'bare allegations'—to warrant conditional certification." *O'Neal v. Emery Fed. Credit Union*, No. 1:13CV22, 2014 WL 6810689, at *5 (S.D. Ohio Dec. 3, 2014) (quotation omitted). Typically, the declarations of several putative class members—in addition to the allegations in the complaint—will suffice. *See, e.g.*, *Lewis v. Huntington Nat'l Bank*, 789 F. Supp. 2d 863, 868 (S.D. Ohio 2011) (Marbley, J.) (conditionally certifying FLSA class based on allegations in complaint, declarations of multiple named plaintiffs, and affidavit of defendant's general counsel); *Crescenzo v. O-Tex Pumping, LLC*, No. 15-CV-2851, 2016 WL 3277226, at *4 (S.D. Ohio June 15, 2016) (Marbley, J.) (granting motion for conditional

7

certification supported by declaration of named plaintiff and declarations of twenty-two additional employees subject to same compensation policies); *Jasper v. Home Health Connection, Inc.*, No. 2:16-cv-125, 2016 WL 3102226, at *1 (S.D. Ohio June 1, 2016) (granting motion for conditional certification supported by declarations of nine named plaintiffs); *Atkinson v. TeleTech Holdings, Inc.*, No. 3:14-cv-253, 2015 WL 853234, at *3 (S.D. Ohio Feb. 26, 2015) (conditionally certifying FLSA class based on declarations from twelve potential plaintiffs).

Here, Plaintiffs submitted three declarations to support the allegations in the Amended Complaint and thus have (barely) met the "lenient" standard for conditional certification. Ultimately, Defendant's arguments against certification may prove fruitful. But at this stage of the litigation, it does not matter "if the employees held different job titles." *Lawrence v. Maxim Healthcare Servs., Inc.*, No. 1:12CV2600, 2013 WL 5566668, *2 (N.D. Ohio Oct. 9, 2013) (citing *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 585 (6th Cir. 2009)). Nor should the Court consider the declarations submitted by Defendant, as doing so at this stage of the litigation would "constitute a premature examination of the merits of the FLSA claims." *Myers*, 201 F. Supp. 3d at 891 (Marbley, J.) (collecting cases, and declining to consider defense affidavits at conditional-certification stage). Finally, while Defendant complains about the "boilerplate" declarations filed by Plaintiffs, for the Court to delve too deeply into the allegations in those declarations would be to assess Plaintiffs' credibility—which the Court typically does not undertake at the conditional certification stage. *See Myers*, 201 F. Supp. 3d at 890 (internal citations omitted); *see also Swigart v. Fifth Third Bank*, 276 F.R.D. 210, 214 (S.D. Ohio 2011).

Plaintiffs have not, however, presented sufficient evidence to justify the conditional certification of a nationwide class. The three declarations supporting Plaintiffs' motion contain information only about employees at Defendant's Hebron call center. Plaintiffs conceded at the

class certification hearing that they have not provided evidence about employees at any location other than the Hebron call center. Plaintiffs argue that, by considering the statements in their declarations that "800 Flowers management from New York" instituted the policy of having CSRs arrive at their workstations between 15 and 30 minutes prior to the beginning of shifts, one can infer that this policy was in place nationwide. (*See* Doc. 31-1 ¶ 5; Doc. 31-2 ¶ 5.) But this inference is far too tenuous to warrant the conditional certification of a nationwide class.

For these reasons, the Court **GRANTS** Plaintiffs' motion such that it will certify conditionally a class of CSRs employed at Defendant's Hebron call center only. *See Snide v. Discount Drug Mart, Inc.*, No. 1:11CV0244, 2011 WL 5434016, at *5 (N.D. Ohio Oct. 7, 2011) (conditionally certifying class of employees at single location); *Simpson v. Caresouth HHA Holdings, LLC*, No. 3:16-cv-79, 2016 WL 3349637, at *4–*5 (M.D. Tenn. June 16, 2016) (finding certification of companywide class inappropriate and limiting conditional class to employees in a single state). Accordingly, the Court conditionally certifies the following class:

> **All call center "Customer Service Representatives," or similar job title, employed by 1-800-Flowers Services Support Center, Inc. in Hebron, Ohio, who were not paid for the overtime hours they worked.**

### B. Class Notice

Having determined that conditional certification of a class of Defendant's Hebron call center CSRs is warranted, the Court turns now to the form and manner of Plaintiffs' proposed notice. Plaintiffs request that the Court: (1) approve their proposed notice and consent to sue forms; (2) order Defendant to produce a class list; (3) allow Plaintiffs' counsel to disseminate the notice and consent to sue forms within 14 days of receipt of the class list from Defendant; (4) permit the dissemination of notice via e-mail; (5) order notice to be posted at Defendant's call

centers; (6) allow the use of an electronic signature on the consent to sue forms; and (7) approve a 90-day opt-in period. (*See* Doc. 31 at 8–14.) The Court will address these requests *seriatim*.

### 1. Contents of Notice and Consent To Sue Forms

Defendant raises a number of objections to Plaintiffs' proposed notice. (*See* Doc. 33 at 18–19.) Under *Hoffman-LaRoche*, "[b]oth the parties and the court benefit from settling disputes about the content of the notice before it is distributed." *Hoffman-LaRoche*, 493 U.S. at 172. At the class certification hearing, the parties agreed to confer about the contents of the proposed notice and consent to sue forms. The parties are **ORDERED** to confer and submit a joint notice form to the Court **thirty (30) days** from the date of this Order.

### 2. Defendant's Production of Class List and E-mail Notice

Although the parties have yet to confer about the contents of the notice, the Court will address certain issues about the form of notice now. Plaintiffs ask the Court to order Defendant to produce a list of all putative class members to Plaintiffs' counsel, which should include the following information about putative class members: (1) each employee's full name; (2) all known addresses; (3) e-mail addresses; and (4) telephone numbers. (Doc. 31 at 10.) Defendant objects to providing anything beyond "the names of the employees, their dates of employment, and their last-known residential addresses." (Doc. 33 at 19.) Additionally, Plaintiffs ask the Court to permit notice via e-mail in addition to ordinary mail. (Doc. 31 at 10.)

The Court finds that e-mail notice is warranted. It had been the common practice in this district to order notice to be sent by first-class mail to current employees and by first-class mail *and* electronic mail to former employees due to concerns that former employees may have moved after the conclusion of their employment. *See, e.g.*, *Lutz v. Huntington Bancshares, Inc.*, No. 2:12-cv-1091, 2013 WL 1703361, at *7 (S.D. Ohio Apr. 19, 2013); *Wolfram v. PHH Corp.*,

No. 1:12-cv-599, 2012 WL 6676778, at *4 (S.D. Ohio Dec. 21, 2012) (noting that e-mail notice to former employees "appropriately safeguards the privacy of individuals not currently a party to the case and helps ensure that all potential plaintiffs receive notice of their right to join this lawsuit"); *Swigart*, 276 F.R.D. at 215. In more recent cases, however, courts in this district have ordered e-mail notice to all putative class members. *See Atkinson*, 2015 WL 853234, at *5; *Petty v. Russell Cellular, Inc.*, No. 2:13-cv-1110, 2014 WL 1308692, at *6 (S.D. Ohio Mar. 28, 2014). This Court agrees with the *Atkinson* court, which held that e-mail notice "appears to be in line with the current nationwide trend" and "advances the remedial purpose of the FLSA, because service of the notice by two separate methods increases the likelihood that all potential opt-in plaintiffs will receive notice of the lawsuit." *Atkinson*, 2015 WL 853234, at *5. This is also consistent with the trend among courts nationwide. *See, e.g.*, *Kutzback v. LMS Intellibound, LLC*, No. 2:13-cv-2767, 2015 WL 1393414, at *6 (W.D. Tenn. Mar. 25, 2015); *Jones v. JGC Dallas LLC*, No. 3:11-cv-2743-O, 2012 WL 6928101, at *5 (N.D. Tex. Nov. 29, 2012), *adopted by* 2013 WL 271665 (N.D. Tex. Jan. 23, 2013); *Lewis v. Wells Fargo & Co.*, 669 F. Supp. 2d 1124, 1128–29 (N.D. Cal. 2009).

Accordingly, upon approval of the parties' joint notice, Plaintiffs will be permitted to distribute notice via regular mail *and* e-mail to all putative class members. There appears to be no need for Plaintiffs to have the telephone numbers of putative class members. Finally, the Court **GRANTS** Plaintiffs' request for Defendants to produce a class list within 14 days of the Court's approval of notice and permit the dissemination of the approved notice within 14 days of Plaintiffs' receipt of the class list.

### 3. Posting of Notice at the Hebron Call Center

Plaintiffs also request that notice be posted at the Hebron call center. (*See* Doc. 31 at 14.) This appears to be a common practice, and Defendant does not object, and therefore the Court approves this form of notice. *See, e.g.*, *Denney v. Lester's LLC*, No. 4:12CV377, 2012 WL 3854466, at *4 (E.D. Mo. Sept. 5, 2012).

### 4. Use of Electronic Signature Service

Plaintiffs ask that putative class members be given the option to execute their consent to sue forms online through an electronic signature service. (Doc. 31 at 13.) This service "allows Class members to sign their Consent to Sue form electronically by clicking on a link in an encrypted e-mail designated only for that user, which in turn takes them to a website where they can review the document they are signing, click on the box indicating they have read and understood the consent form, and insert information such as their names and addresses." (*Id.*) Multiple courts have approved this form of notice, and Defendant does not object. Accordingly, the Court approves this form of notice. (*See id.* at 12 (collecting cases).)

### 5. 90-day Opt-in Period

Finally, Plaintiffs ask the Court to approve a 90-day opt-in period, in light of the fact that putative class members are employees of the telephone customer service industry, and Plaintiffs' counsel "anticipates significant difficulties in locating all potential class members due to the fact that Defendant probably no longer employs many of the potential class members." (Doc. 31 at 14.) Defendant objects to a 90-day notice period, arguing that a 60-day notice period is more common. (*See* Doc. 33.) But 90-day notice periods are also common in FLSA lawsuits, and the difficulty that Plaintiffs' counsel may have in locating former employees of Defendant, even of a single location, weighs in favor of a longer notice period. *See, e.g.*, *Wolfram*, 2012 WL

6676778, at *4 (granting 90-day notice period); *Musarra v. Digital Dish, Inc.*, No. C2-05-545, 2008 WL 818692, at *7 (S.D. Ohio Mar. 24, 2008) (same). Thus, the Court **GRANTS** Plaintiffs' request for a 90-day opt-in period.

### C.  Class Counsel

Plaintiffs ask the Court to appoint the law firms of Levin Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A. ("Levin Papantonio") and Johnson Becker, PLLC ("Johnson Becker") as interim class counsel. (*See* Doc. 31 at 15.) The appointment of interim class counsel is governed by Federal Rule of Civil Procedure 23(g)(3), and courts routinely evaluate the factors in Rule 23(g)(1) when appointing interim class counsel prior to class certification. *See Ross v. Jack Rabbit Servs., LLC*, No. 3:14-CV-00044, 2014 WL 2219236, at *5 (W.D. Ky. May 29, 2014). These factors include:

> (i) the work counsel has done in identifying or investigating potential claims in the action;
> (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
> (iii) counsel's knowledge of the applicable law; and
> (iv) the resources that counsel will commit to representing the class;

Fed. R. Civ. P. 23(g)(1). In addition, a court may consider whether counsel can fairly and adequately represent the interests of the class. *Id.* 23(g)(4); *see also Ross*, 2014 WL 2219236, at *5.

All of the Rule 23(g)(1) factors appear to be met here, and Defendant does not challenge Plaintiffs' request to appoint their counsel as interim class counsel. Plaintiffs attached the resumes of Levin Papantonio and Johnson Becker as exhibits to their motion for conditional certification. (*See* Docs. 31-4, 31-5.) Both firms have significant experience, and would fairly and adequately represent the class. Accordingly, and because defense counsel has no objections, the Court appoints Plaintiffs' counsel as interim class counsel.

## IV. CONCLUSION

For the reasons stated above, the Court **GRANTS** in part Plaintiffs' Motion (Docs. 30, 31) and conditionally certifies the following class under the FLSA:

> **All call center "Customer Service Representatives," or similar job title, employed by 1-800-Flowers Services Support Center, Inc. in Hebron, Ohio, who were not paid for the overtime hours they worked.**

Additionally, the Court **ORDERS** the parties to confer on the form of notice and submit a joint notice within 30 days. Once notice is approved, Defendants must produce a class list within 14 days of approval, and notice will be distributed by regular mail and e-mail within 14 days of Plaintiffs' receipt of the class list. Putative class members are permitted to sign their consent to sue forms electronically. Notice may be posted at Defendant's Hebron call center. The opt-in period will last 90 days. Finally, the Court appoints Levin Papantonio and Johnson Becker as interim class counsel.

**IT IS SO ORDERED**.

    s/ Algenon L. Marbley
**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**Dated: August 10, 2017**